

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

November 26, 1965

Honorable Robert S. Calvert        Opinion No. C-552
Comptroller of Public Accounts
Austin, Texas                      Re:  Validity of appropriation
                                        to the Upper Red River Flood
                                        Control and Irrigation Dis-
Dear Mr. Calvert:                       trict.

        You have requested the opinion of our office on whether
the Upper Red River Flood Control and Irrigation District can
use the appropriation out of the General Revenue Fund of the
State to the Upper Red River Flood Control and Irrigation
District.  The Legislature in the current General Appropriation
Act (House Bill 12, Acts of the 59th Legislature, Regular
Session, 1965) made the following appropriation to the Upper
Red River Flood Control and Irrigation District:

           "UPPER RED RIVER FLOOD CONTROL AND
                 IRRIGATION DISTRICT

                                        For the Year Ending
                                        August 31, 1966

There is hereby appropriated out
of the General Revenue Fund to
the Upper Red River Flood Con-
trol and Irrigation District for
the purpose of placing a water
gauging station at the Prairie
Dog Fork Bridge in Hall County,
and for the purpose of placing
a siltation gauge at said site
and for the necessary expenses
of travel, research, and other
expenses necessary in collect-
ing information necessary for
a study of the water potential-
ities of the Prairie Dog Fork
of the Red River, the sum of......        $5,000"

        The Upper Red River Flood Control and Irrigation District
was created by the provisions of Article 8280-122, Vernon's

-2667-

Civil Statutes.   We quote the pertinent parts:

"Section 1.   There is hereby created
within the State of Texas, in addition
to the districts into which the State
has heretofore been divided, a conser-
vation and reclamation district to be
known as the 'Upper Red River Flood
Control and Irrigation District'
(hereinafter called the District) and
consisting of that part of the State of
Texas which is included within the
Counties of Briscoe, Hall, and Childress.
Such District shall be and is hereby de-
clared to be a governmental agency and
body politic and corporate, with the pow-
ers, rights, privileges, and functions
hereafter specified, and the creation
of such District is hereby declared to be
essential to the accomplishment of the
purposes of Section 59 of Article 16 of
the Constitution of the State of Texas,
including (to the extent hereafter
authorized) the control, storing, pre-
servation, and distribution of waters
of the Prairie Dog Fork of Red River and
its tributaries for the purpose of pro-
tecting the lives and property of the
inhabitants of the territory affected by
the Prairie Dog Fork of Red River, its
tributaries, and the streams to which it
is a tributary, and in addition the
reclamation, conservation, draining, and
irrigation of lands within the District.
Nothing in this Act or in any other Act
or Law contained, however, shall be
construed as authorizing the District to
levy or collect taxes or assessments, or
in any way to pledge the credit of the
State.

"Sec. 2.   In accordance with the limitations
and provisions of this Act, the District
shall have and is hereby authorized to
exercise the following powers, rights,
privileges, and functions:

"(a) to control, store, and preserve,
within the boundaries of the District,
the waters of the Prairie Dog Fork of
Red River and its tributaries, for the
reclamation and irrigation of the lands
of the District, and to use, distribute,
and sell the same, within the boundaries
of the District for any such purpose;

"(b) to prevent or aid in the prevention
of damage to person or property from the
waters of the Prairie Dog Fork of Red
River and its tributaries;

"(m) to make contracts and to execute
instruments necessary or convenient to the
exercise of the powers, rights, privileges,
and functions conferred upon it by this
Act;

"(o) to do any and all other acts or things
necessary or convenient to the exercising
of the powers, rights, privileges, or
functions conferred upon it by this Act or
any other Act or law.

"Sec. 8. Any and every indebtedness,
liability, or obligation of the District,
for the payment of money, however entered
into or incurred, and whether arising from
contract, implied contract or otherwise,
shall be payable solely (1) out of revenue
received by the District and not held in
trust by virtue of any prior lien or agree-
ment, or (2) if the Board shall so determine
out of any fund received by the District
from grants or loans made to the District by
the United States Government or corporation
or agency created by or designated by it.
(Emphasis supplied)

Section 59 of Article 16 of the Texas Constitution
provides for the creation of such a flood control and irriga-
tion district as is being here considered and expressly
declared that the carrying out of such purposes or uses shall
be "public rights and duties." We have heretofore held in

Opinion No. C-436, that this constitutional provision and statutes enacted pursuant thereto are to be construed together and given a broad and liberal construction in order to effectuate the intent of the people and the legislature. We also held that such a statute in view of the mandatory public purpose and duty carries with it by necessary implication the authority to do whatever is reasonably necessary to effectuate such purpose.

It is well settled that water, floor control, and irrigation districts possess such powers as are expressly granted by statute, and also those necessarily or fairly implied, that are essential to the accomplishment of the declared objects and purposes of the districts. 94 C.J.S. 293, 294, 71, Waters, Secs. 321, 243(5); Attorney General's Opinion C-436, supra.

It affirmatively appears from the purposes and powers, expressly granted and those necessarily implied, by Article 8280-122 that the Legislature had the authority to make the $5,000 appropriation out of the state's General Revenue Fund, for the stated purposes.

Section 8 of Art. 8280-122 merely requires that the District, in incurring any indebtedness, liability, or obligation for the payment of money, shall pay for same only out of revenue received by the District and not held in trust by virtue of any prior lien or agreement, or out of any fund received by the District from grants or loans by the federal government or agency created by or designated by it. We do not construe the legislature's language to prohibit expenditures by the District from state legislative appropriations. We construe the section of the statute as permitting the District's expenditure of such a state legislative appropriation as was here made. Such state revenues are "revenues received by the District and not held in trust by virtue of any prior lien or agreement".

The word "revenue" as used in the statute is neither explained, defined, nor limited in its meaning. It should be considered to have been used in its usual, ordinary sense so as to include any public moneys received by a state agency or its subdivisions from whatever source derived and in whatever manner. See 37A Words & Phrases 262, et seq., under "Revenue"; and 1965 Pocket Part, p. 32, and cases cited.

Honorable Robert S. Calvert, Page 5      Opinion No. C-552


Giving the statute and the word "revenue" a liberal and reasonable construction in the light of the declared public policy of this state in such conservation legislation, we therefore hold that the appropriation out of the General Revenue Fund to said District may be validly expended by it for the stated purposes.

## S U M M A R Y

Article 8280-122, Vernon's Civil Statutes, creating the Upper Red River Flood Control and Irrigation District, is sufficient pre-existing law to provide a basis for an appropriation, and the appropriation in question may be expended by the District for the purposes stated therein.

Yours very truly,

WAGGONER CARR
Attorney General

By Kerns B. Taylor
Kerns B. Taylor
Assistant

KBT:dl

APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman
Linward Shivers
Phillip Crawford
Malcolm Quick
Scott Garrison

APPROVED FOR THE ATTORNEY GENERAL
By:  T. B. Wright